[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15535
Non-Argument Calendar

_____

D. C. Docket No. 06-00046-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR ROY WATSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 14, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Hector Roy Watson appeals his 120-month sentence for drug trafficking offenses. Specifically, Watson argues that he should not have received a career offender enhancement, pursuant to United States Sentencing Guideline § 4B1.1(b), contending that the three predicate offenses on which this enhancement was based were related and should have counted as one predicate offense. We AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Watson on two counts of possessing with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and 18 U.S.C. § 2. Watson pled guilty to these charges, without the benefit of a plea agreement.

Before Watson's sentencing, a probation officer prepared a presentence investigation report ("PSI"), which initially set Watson's base offense level at 26, pursuant to U.S.S.G. § 2D1.1(c) (2005). The probation officer determined that Watson was a career offender, pursuant to U.S.S.G. § 4B1.1(a). The PSI listed Watson's predicate offenses as: (1) a Florida state court conviction for aggravated assault with a deadly weapon, stemming from an incident that occurred on 11 July 1994, in Case No. CF-941336; (2) a Florida state court conviction for aggravated assault with a deadly weapon, stemming from an incident that occurred on 26 July 1994, in Case No. CF-941337; and (3) a Florida state court conviction for

aggravated assault, stemming from an incident that occurred on 28 August 1994, in Case No. CF-941338. Watson was arrested for each of these offenses on the same day and was sentenced for each of these convictions on the same day. Based on the determination that Watson qualified for career offender status, the PSI set his enhanced base offense level at 34, pursuant to § 4B1.1(b), since the statutory maximum for his instant offenses was 40 years of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(B). The PSI then applied a three level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

The PSI initially calculated Watson's criminal history category at V. After the probation officer determined that Watson was a career offender, his criminal history category was set at VI, pursuant to § 4B1.1(b). Accordingly, with this criminal history category and a total offense level of 31, Watson's guideline imprisonment range was 188-235 months of imprisonment.

In his objections to the PSI, Watson attacked his career offender enhancement, arguing that his three prior convictions were related, such that they comprised only one predicate offense. At his initial sentencing hearing, Watson repeated his objection to his career offender enhancement. He asserted that his prior convictions each stemmed from a dispute between his ex-girlfriend and her family and friends, that there were no intervening arrests between the three

3

incidents in question, and that he was sentenced on the same day for each prior conviction. The government responded that the three incidents in question took place several days apart and that the prior convictions were not formally consolidated, were assigned different docket sheets, and received separate judgments, such that they should count separately for career offender calculation purposes. The district court overruled Watson's objection, finding that the prior convictions were not related because they did not arise from incidents occurring on the same occasion, were not part of a single common scheme or plan, and were not formally or functionally consolidated for sentencing because they were assigned separate case numbers.

Watson also objected to the PSI's factual description of his predicate offenses. Watson argued that his ex-girlfriend and her family and friends concocted those charges and that he was innocent of the charges. Watson asked for an opportunity to present testimony on this argument. The government responded that Watson's sentencing for a different offense was "not the time or place" to challenge his previous convictions. R3 at 20. The district court agreed, stating that Watson's innocence of those charges was irrelevant and that the charges would not be re-litigated. When Watson urged the district court to hear this testimony because it might influence the district court's fashioning of a

reasonable sentence, the district court again refused.

At the continuation of his sentencing hearing, Watson revisited the issue of whether his predicate offenses were related, stating that he had obtained the state court documents for these prior convictions and had learned that certain of them were addressed on one scoresheet for state court sentencing purposes. Watson argued that the fact that the convictions were sentenced using the same scoresheet demonstrated that the cases were consolidated. The government reiterated its previous arguments. The district found that the use of a single scoresheet was insufficient to show that the cases were related and repeated its earlier finding that the predicate offenses should count separately.

The state court documents for the prior convictions were submitted into evidence. These exhibits demonstrate the following. The charges in Case Nos. CF-941336, CF-941337, and CF-941338 each were contained in separate informations. Watson pled nolo contendere to each charge. In Case No. CF-941336, Watson was sentenced to 24 months of community control, to be served consecutive to the sentence imposed in Case No. CF-941314. In Case No. CF-941337, Watson was sentenced to 24 months of community control, to be served concurrently with the sentence imposed in Case No. CF-941336. Finally, in Case No. CF-941338, Watson was sentenced to five years of probation, to be

served consecutive to the sentence imposed in case No. CF-941337. Theses sentences were reflected in separate judgments. These state court documents also included the scoresheet used at Watson's sentencing. This scoresheet listed Watson's conviction for aggravated assault with no deadly weapon in Case No. CF-941338 as his "primary offense" and his conviction for aggravated assault in case No. CF-941337 as an "additional offense." Exh. Folder 1, Exh. C at unnumbered 5. In the bottom right-hand corner of the scoresheet, the person who prepared it indicated that the scoresheet was "Paper No. 22" in "Case No. [CF-941314]." Id.

The district court adopted the PSI, and stated that it had considered the § 3553(a) factors and found that a sentence of 120 months of imprisonment as to each count, to be served concurrently, was sufficient but not greater than necessary for the purposes of sentencing. In its statement of reasons, the district court stated that this variance was granted to reflect Watson's post-offense rehabilitation.

## II. DISCUSSION

Watson argues that the three predicate offenses were related because they stemmed from a series of altercations between himself and his ex-girlfriend's family and friends, who concocted charges against him in an effort to discredit

him.[1]  As a result, he contends, he had only one predicate offense and, therefore,

was not a career offender.  The government responds that the predicate offenses

properly were counted separately and the prior convictions were not related.

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the

sentencing court first must correctly calculate the guideline imprisonment range

and then must treat that range as advisory and impose a reasonable sentence.[2]

United States v. Talley, 481 F.3d 784, 786 (11th Cir. 2006) (per curiam).  "We

review a district court's determination that prior convictions are not related under

U.S.S.G. § 4A1.2 for clear error."  United States v. Hernandez-Martinez, 382 F.3d

1304, 1306 (11th Cir. 2004) (per curiam) (citation and footnote omitted).

The career offender provision of the Sentencing Guidelines provides that

[a] defendant is a career offender if (1) the defendant was at least
eighteen years old at the time the defendant committed the instant
offense of conviction; (2) the instant offense of conviction is a felony

---

[1] The three predicate offenses were: (1) a Florida state court conviction for aggravated assault with a deadly weapon, stemming from an incident that occurred on 11 July 1994; (2) a Florida state court conviction for aggravated assault with a deadly weapon, stemming from an incident that occurred on 26 July 1994; and (3) a Florida state court conviction for aggravated assault, stemming from an incident that occurred on 28 August 1994.

[2] Watson expressly declines to attack the reasonableness of his sentence on appeal.  Aside from his argument that his predicate offenses were related for career offender classification purposes, Watson argues that the district court erred in failing to consider his arguments that he was innocent of these predicate offenses.  This argument is without merit, however, as we have held that defendants in federal sentencing proceedings may not attack collaterally those state court convictions used to support a § 4B1.1 career offender enhancement, except where the attack is based on violations of the right to counsel.  United States v. Farris, 77 F.3d 391, 397 (11th Cir. 1996) (citation omitted).

that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Regarding the third prong of this test, the Guidelines provide that whether prior convictions are counted separately depends on whether the sentences imposed for those convictions were counted separately in calculating the defendant's criminal history category. See U.S.S.G. § 4B1.2(c). Pursuant to the provisions that guide criminal history category calculation, criminal history points are assigned for each prior sentence, but those prior sentences stemming from "related" cases are "treated as one sentence." U.S.S.G. §§ 4A1.1(a), (b), and (c) and 4A1.2(a)(2).

The commentary to § 4A1.2 explains that prior sentences are unrelated if they were for offenses that were "separated by an intervening arrest," but that prior sentences are related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for sentencing. U.S.S.G. § 4A1.2, cmt. n.3. Consolidation for sentencing generally requires a formal consolidation order. See United States v. Smith, 385 F.3d 1342, 1345-46 (11th Cir. 2004) (per curiam), vacated on other grounds, 543 U.S. 1181, 125 S. Ct. 1401 (2005) (vacating and remanding in light of Booker); Hernandez-Martinez, 382 F.3d at 1307. In Buford v. United States,

8

however, the Supreme Court approved of the Seventh Circuit's holding that predicate offenses are "functionally consolidated" for sentencing, and therefore related, when they are "factually or logically related, and sentencing was joint." 532 U.S. 59, 61, 121 S. Ct. 1276, 1278 (2001) (citation and quotation omitted).

Regarding whether predicate offenses were part of a common scheme or plan, in United States v. Veteto, we held that this "is a highly fact-intensive question." 920 F.2d 823, 825 (11th Cir. 1991). In that case, the defendant's prior crimes consisted of a burglary of a residence and an armed robbery of a hotel, which were committed over a month apart. Id. at 824. The defendant argued that these prior crimes were part of a common scheme because he committed both in an effort to collect money from individuals who had bought drugs from him previously. Id. at 825. The district court there rejected this argument because different crimes were involved on different days against different victims, and we held that we could not say that the district court's conclusion was clearly erroneous. Id. at 826.

Regarding the effect of the use of a single state sentencing scoresheet on the question of whether predicate offenses were consolidated, a Florida state court has held that "[a] trial courts errs in failing to use a single scoresheet for each separate case for which sentencing is pending, notwithstanding that the offenses are too

9

unrelated to allow consolidation or joinder at trial." Harris v. State, 619 So. 2d 1043, 1044 (Fla. 4th DCA 1993) (per curiam); Gallagher v. State, 476 So. 2d 754, 756 (Fla. 5th DCA 1985) (requiring the sentencing court "to assure that all of a defendant's cases pending for sentencing in a particular county at the time of that defendant's first sentencing hearing are disposed of using one scoresheet," and, accordingly, pending cases must be administratively transferred to a single sentencing judge). Such "joint sentencing for administrative convenience," however, does not necessarily render convictions consolidated for sentencing within the meaning of the commentary to § 4A1.2. See Smith, 385 F.3d at 1346.

Regarding whether predicate offenses were "functionally consolidated," we held in Hernandez-Martinez that the district court did not clearly err in declining to apply this concept, even though the defendant received concurrent sentences and was sentenced on the same day and by the same judge for his predicate offenses, when these predicate offenses were assigned different docket numbers, the defendant received separate judgments for each predicate offense, and the defendant was represented by two different attorneys at the sentencing of each predicate offense. 382 F.3d at 1306-1308. We likewise held in Smith that the district court's finding that this concept was not applicable was not clearly erroneous, even though the defendant received concurrent sentences on the same

10

day, by the same judge, and while being represented by the same attorney, when the predicate offenses were assigned different docket numbers and the defendant received separate judgments for each predicate offense. 385 F.3d at 1343, 1346.

As an initial matter, it is not disputed that Watson was at least 18 years old when he committed the instant offense, that the instant offense is a controlled substance violation, and that the predicate offenses were crimes of violence. See U.S.S.G. § 4B1.1(a). Rather, the issue is whether Watson has one or three predicate offenses. It is not disputed that the incidents giving rise to the prior convictions were not separated by intervening arrests and did not occur on the same occasion or that the Florida court did not issue a formal order of consolidation. See U.S.S.G. § 4A1.2, cmt. n.3. Accordingly, the relevant questions are whether Watson's predicate offenses were part of a singe common scheme or plan or functionally consolidated. See id.

Afer careful review of the record, we hold that the district court did not clearly err in counting Watson's predicate offenses separately. See Smith, 385 F.3d at 1344. The district court found that Watson's predicate offenses did not arise from incidents that were part of a single common scheme or plan. Watson argues to the contrary that his predicate offenses stemmed from a series of altercations between himself and his ex-girlfriend's family and friends. We

11

previously have rejected a similar argument where the defendant asserted that his predicate offenses stemmed from a series of altercations between himself and people who owed him drug money. See Veteto, 920 F.2d at 825. In fact, Watson's brief contends that it was his victims, and not Watson, that orchestrated a common scheme (in an attempt to discredit him). Thus, there is nothing to suggest that the district court's finding was clear error. See Smith, 385 F.3d at 1344.

Also, the district court found that Watson's prior convictions were not functionally consolidated. In both Hernandez-Martinez and Smith, we upheld similar conclusions when predicate offenses were reflected by different docket numbers and in separate judgments, as here. See Hernandez-Martinez, 382 F.3d at 1306-08; Smith, 385 F.3d at 1343, 1346. In both of those cases, we were not swayed by the facts that the defendants received concurrent sentences by the same judge and on the same day to hold that the district court's finding was clearly erroneous. Id. Additionally, the fact that Watson was sentenced using a single state sentencing scoresheet, alone, does not convince us. See Harris, 619 So. 2d at 1044; Smith, 385 F.3d at 1346. Thus, there is nothing to suggest that the district court's finding was clear error. See Smith, 385 F.3d at 1344.

### III. CONCLUSION

We hold that the district court did not clearly err in counting Watson's three

predicate offenses separately.  Therefore, we affirm Watson's receipt of a

§ 4B1.1(b) enhancement and his sentence of 120 months of imprisonment.

**AFFIRMED.**